UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMIE SHOULDERS,<br><br>Defendant. | CR. 17-50090-02-JLV<br><br>ORDER |

**INTRODUCTION**

A superseding indictment charges defendant Jamie Shoulders with second degree murder, discharge of a firearm during a crime of violence and possession of a firearm with an obliterated serial number. (Docket 58). Defendant filed a motion to suppress statements he made to law enforcement. (Docket 89). The suppression motion was referred to the magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order dated March 9, 2015. Magistrate Judge Daneta Wollmann conducted a hearing and issued a report and recommendation on the motion. (Dockets 103 & 127). The magistrate judge determined defendant's motion should be granted. (Docket 127).

The government filed objections. (Docket 146). The objections target the magistrate judge's "conclusion that the defendant did not initiate contact after invoking his *Miranda*[1] rights[,]" the "finding that the agents' continued

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

discussion with Mr. Shoulders after he invoked his rights constituted interrogation[,]" and the "finding that the defendant did not waive his *Miranda* rights." Id. at pp. 1-2. The defendant filed a response to the government's objections. (Docket 163).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

The government does not articulate a specific objection to the magistrate judge's factual background statement, (Docket 127 at pp. 2-6), so the court adopts the factual findings in that portion of the report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). Where necessary, facts are included in the court's analysis.

## ANALYSIS

### I. The right to remain silent

On June 1, 2017, two special agents with the Federal Bureau of Investigation ("FBI") interrogated defendant at the Pennington County Investigation building. (Docket 127 at p. 2). The special agents ("SAs") were Matt Weber and Tyler Vose. Id. SA Weber started by asking defendant

whether he had a cellphone or Facebook account. Id. at p. 3. Less than one minute into the interrogation and before anyone brought up anything related to defendant's charges, defendant stated, "I don't know what this is about, so I am going to remain silent." Id. Immediately after that statement, SA Weber remarked, "Oh, okay, sure." Id. Defendant stated, "I have the right to remain silent so[—]" before SA Weber interrupted and proceeded talking to defendant, saying, "we will make it real clear[ ]" and "you don't have to say anything. I will do all of the talking. So you are being charged with first degree murder." Id. Defendant responded, "On what?", and the interrogation continued. Id. Neither agent read defendant his Miranda rights until just after two minutes into the interrogation. Id. at p. 4.

"In [Miranda], the Court adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right from the 'inherently compelling pressures' of custodial interrogation." Maryland v. Shatzer, 559 U.S. 98, 103 (2010) (quoting Miranda, 384 U.S. at 467). "The rule in *Miranda* requires that any time a person is taken into custody for questioning, a law enforcement officer must, prior to questioning, advise the individual of his right to be free from compulsory self-incrimination and his right to the assistance of counsel." United States v. Axsom, 289 F.3d 496, 500 (8th Cir. 2002) (citing Miranda, 384 U.S. at 444); see also United States v. Laurita, 821 F.3d 1020, 1023 (8th Cir. 2016) ("The rule under Miranda prevents the government from using statements 'stemming from custodial

3

interrogation of the defendant,' unless the government has used 'procedural safeguards effective to secure the privilege against self-incrimination.'") (quoting Miranda, 384 U.S. at 444). "During an interrogation, 'if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'" United States v. Adams, 820 F.3d 317, 322-23 (8th Cir. 2016) (quoting Miranda, 384 U.S. at 473-74); see United States v. Jones, 842 F.3d 1077, 1083 (8th Cir. 2016) ("Officers must stop questioning if a suspect clearly and consistently expresses a desire to remain silent."); see also United States v. Cordier, 224 F. Supp. 3d 835, 839 (D.S.D. 2016) ("The Supreme Court in Miranda held that if a suspect undergoing custodial interrogation 'indicates in any manner' that he wants to remain silent, the interrogation must stop.") (quoting Miranda, 384 U.S. at 473-74). "In general, any statements elicited from a suspect in violation of these rules are inadmissible in the government's case-in-chief." United States v. Vanover, 630 F.3d 1108, 1114 (8th Cir. 2011) (per curiam) (discussing violations of Miranda's rules).

As the magistrate judge determined, defendant was subjected to custodial interrogation and sufficiently invoked his right to remain silent when he stated, "I don't know what this is about, so I am going to remain

4

silent."  (Docket 127 at pp. 3, 9)[2]; see Adams, 820 F.3d at 322-23 (discussing the legal standard for invoking the right to silence).  SA Vose testified he understood this statement to be a "pretty straightforward" and unambiguous invocation of defendant's right to silence.  (Docket 106 at p. 24).  SA Weber testified he believed defendant invoked his right to remain silent.  Id. at pp. 55-56.

"When a suspect invokes his right to remain silent, police must 'scrupulously honor' this invocation by, at the very least, ceasing the interrogation immediately and waiting a substantial period before reinitiating questioning."  Cordier, 224 F. Supp. 3d at 839 (quoting Michigan v. Mosley, 423 U.S. 96, 104-06 (1975)) (internal alteration omitted).  "The critical safeguard" of the right to remain silent "is a person's 'right to cut off questioning.' "  Mosely, 423 U.S. at 103 (quoting Miranda, 384 U.S. at 474).  "In determining whether a defendant's right to silence is 'scrupulously honored,' [the] court considers three factors: 1) whether the initial interrogation ceased immediately upon the defendant's request; 2) whether a significant period had passed and fresh *Miranda* warnings were given before resuming questioning; and 3) whether the later interrogation is

---

[2]The government concedes this point, as shown by its argument heading: "A. The Defendant Initiated Contact After Invoking His *Miranda* Rights[.]" (Docket 146 at p. 2).  Nonetheless, the court makes this determination clear because it is critical in the analysis.

5

restricted to a crime that was not the subject of the first interrogation." United States v. DeMarce, 564 F.3d 989, 994 (8th Cir. 2009).

The government argues defendant waived his right to silence because he initiated contact with the agents after invoking his right. (Docket 146 at pp. 2-4). The analysis, however, must begin with the considerations enumerated in DeMarce, 564 F.3d at 994. Focusing on the first two factors, the court finds the agents did not "scrupulously honor" defendant's right to remain silent.[3] Mosley, 423 U.S. at 104-06. Questioning did not "cease[ ] immediately upon the defendant's request" and almost no time passed "before resuming questioning." DeMarce, 564 F.3d at 994; see Hatley v. Lockhart, 990 F.2d 1070, 1074 (8th Cir. 1993) (holding approximately two hours is a "significant period of time"). SA Webers' responses "we will make it real clear" and "you are being charged with first degree murder" came on the heels of defendant stating he would remain silent. (Docket 127 at p. 3). The government argues SA Weber "did not ask the defendant a question at that time or interrogate him but instead started to explain to the defendant 'what this is about.' " (Docket 146 at p. 2). But the issue is whether the interrogation encounter with law enforcement stopped once defendant invoked his right to silence—it did not.

---

[3]The third factor does not fit this case. Because defendant invoked his right to silence so early in the interrogation, the court is unable to evaluate "whether the later interrogation is restricted to a crime that was not the subject of the first interrogation." DeMarce, 564 F.3d at 994.

6

The government's position would be stronger if "after [defendant] refused to make a statement at the initial interrogation, the agents 'did not attempt to persuade [him] to reconsider or to resume the interrogation.'" DeMarce, 564 F.3d at 994 (quoting United States v. Finch, 557 F.2d 1234, 1236 (8th Cir. 1977)). In asserting his right to silence, defendant stated, "I don't know what this is about." (Docket 127 at p. 3). When defendant invoked his right and connected that decision to not knowing why the agents wanted to question him, SA Weber's choice to immediately respond with the charge against defendant is an "attempt to persuade [defendant] to reconsider" invoking the right to silence.[4] DeMarce, 564 F.3d at 994. During the evidentiary hearing, SA Weber testified, "[i]n the event that they invoke their rights to remain silent we don't have to stop. We can continue talking." (Docket 106 at p. 77). Miranda does not prohibit agents from uttering any words on any subject after a suspect invokes the right to remain silent; but it does prohibit words or actions—like those in this case—that do not "scrupulously honor" a person's right to silence. See Mosley, 423 U.S. at 104-06. Because the agents did not sufficiently respect defendant's right to remain silent after he invoked that right, the

---

[4]Because SA Weber's immediate response had this effect, this is not a case where defendant "initiated a conversation with agents" which "was an effective reversal of his previously expressed desire not to talk." United States v. Drapeau, 414 F.3d 869, 874 (8th Cir. 2005) (internal quotation marks omitted).

7

subsequent portion of the interview was obtained in violation of Miranda and must be suppressed from the government's case-in-chief on that basis. See Vanover, 630 F.3d at 1114.

Defendant's question, "On what?", in response to SA Weber telling defendant he was charged with first degree murder was not a waiver of Miranda rights. "To establish a valid *Miranda* waiver, the Government must show that the waiver was knowing, intelligent, and voluntary." United States v. Woods, 829 F.3d 675, 680 (8th Cir. 2016). Based on the record, the government has not established that defendant's conduct or his question, which preceded any Miranda warnings, constituted an adequate waiver of Miranda rights. While defendant did proceed to speak with the agents, that does not impact the analysis because the agents never honored defendant's invocation of his right to silence as the law requires.

The determinations above relate to defendant's invocation of his right to silence under Miranda and the violation of that right. Parts of the record blend discussions of how the right to silence and the right to counsel apply in this case. "Both protect the privilege against compulsory self-incrimination[ ] by requiring an interrogation to cease when either right is invoked." Berghuis v. Thompkins, 560 U.S. 370, 381 (2010) (internal citation omitted). However, separating the discussion of each right is important because defendant invoked them at different times and the analysis of the individual rights is not identical. See Edwards v. Arizona,

8

451 U.S. 477, 485 (1981) ("In [Mosely, 423 U.S. at 104 n.10], the Court noted that *Miranda* had distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and had required that interrogation cease until an attorney was present only if the individual stated that he wanted counsel."). For example, on the right to silence, a break just over two hours may be sufficient to "scrupulously honor[ ]" invocation of that right. See Hatley, 990 F.2d at 1074. However, with the right to counsel, absent the presence of counsel or the suspect engaging law enforcement himself, the presumption of involuntariness following invocation of the right is not eliminated until a break in custody of 14 days occurs. See Shatzer, 559 U.S. at 105-10.

**II. The right to counsel**

Approximately two minutes into the interrogation, SA Weber read defendant his Miranda rights and asked him to sign an FBI Advice of Rights Form. (Docket 127 at p. 4). SA Weber said, "If you don't mind, I'd just like you to, uh, sign the bottom right here just saying that I read you your rights." Id. Defendant did not sign at that time and responded, "I need my attorney man, I ain't gonna do nothing until—", before SA Weber interrupted, "That's fine. You can sign that and you can lawyer up, that is fine. You don't have to sign it, that is fine. All right." Id.

"Once an accused who is in custody 'expresses his desire to deal with the police only through counsel,' he shall not be 'subject to *further interrogation*

by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.'" United States v. Jackson, 852 F.3d 764, 770 (8th Cir. 2017) (quoting Edwards, 451 U.S. at 484-85) (internal alterations omitted) (emphasis in original). Like Miranda, the holding of Edwards relates to the Fifth Amendment, but the Supreme Court has "frequently emphasized that the *Edwards* rule is not a constitutional mandate, but judicially prescribed prophylaxis." See Shatzer, 559 U.S. at 105 (collecting cases).

"The rationale of *Edwards* is that once a suspect indicates that 'he is not capable of undergoing [custodial] questioning without advice of counsel,' 'any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the inherently compelling pressures and not the purely voluntary choice of the suspect.'" Id. at 104-05 (quoting Arizona v. Roberson, 486 U.S. 675, 681 (1988)) (internal quotation marks omitted). "The *Edwards* presumption of involuntariness ensures that police will not take advantage of the mounting coercive pressures of prolonged police custody . . . by repeatedly attempting to question a suspect who previously requested counsel until the suspect is badgered into submission[.]" Id. at 105 (internal citations and quotation marks omitted). Edwards is a "second layer of prophylaxis for the *Miranda* right to counsel[.]" Davis v. United States, 512 U.S. 452, 458 (1994) (internal quotation marks omitted).

"Interrogation occurs when a law enforcement officer engages in 'either express questioning or its functional equivalent,' which includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the subject.'" Jackson, 852 F.3d at 771 (quoting Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980)). "The applicability of the rigid prophylactic rule of *Edwards* requires courts to determine whether the accused *actually invoked* his right to counsel." Davis, 512 U.S. at 458 (emphasis in original) (internal quotation marks omitted). "[T]his is an objective inquiry." Id. "Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." Id. at 459 (internal quotation marks omitted). "[O]nly a clear and unequivocal request for the assistance of counsel may serve to invoke a defendant's right." United States v. Giboney, 863 F.3d 1022, 1029 (8th Cir. 2017) (internal quotation marks omitted). A suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. (internal quotation marks omitted).

The magistrate judge determined defendant's statement, "I need my attorney, man, I ain't gonna do nothing until—", invoked his right to counsel. (Docket 127 at p. 9). The government does not object to this

11

conclusion. SA Vose testified he believed defendant invoked his right to counsel and it was not ambiguous. (Docket 106 at p. 25). SA Weber also understood defendant's statement as an invocation of the right to counsel. Id. at p. 75. Defendant sufficiently invoked his right to counsel. See Davis, 512 U.S. at 458-59.

After defendant invoked, the following dialogue occurred:[5]

| | |
|---|---|
| Mr. Shoulders: | *I need my attorney man, I ain't gonna do nothing until—* |
| Agent Weber: | [Interrupting and talking over Mr. Shoulders] That's fine. You can sign that and you can lawyer up, that is fine. You don't have to sign it, that is fine. All right. |
| Mr. Shoulders: | I don't know what you guys are talking about. I don't know what all of this is in front of me.[6] |
| Agent Weber: | Okay, so here is the deal. You are at a point. You are at a crossroads, ok? |
| Mr. Shoulders: | In what? |
| Agent Weber: | We know everything. We talked to [codefendants' names]. We know everything. |
| Mr. Shoulders: | Well what do you know? |
| Agent Weber: | So here's the deal. You could take the path of cooperation and help us out. |

---

[5]The court presents the dialogue as it appears in the report and recommendation.

[6]SAs Weber and Vose placed in front of defendant photos of the gun recovered from the scene and the deceased body of the alleged victim in his van. (Docket 106 at pp. 37-38).

12

| | |
|---|---|
| Mr. Shoulders: | If you guys know everything then— |
| Agent Weber: | [Interrupting] And I could go—I could go—I'm going to explain. You could choose the path of cooperation and I can go to the U.S. Attorney and I can say hey, Jamie is trying to help us out. He is trying to do the right thing and clear . . . all of this up. Or, I can say, he refused to talk. He doesn't want to help us out. |
| Mr. Shoulders: | And what does that do? |
| Agent Weber: | So if you have, if you want to have any hope of leniency or anything else, any kind of a deal, anything like that. I can't promise you anything, but cooperating is the only way we can get that to happen. |
| Mr. Shoulders: | What, what do I have to do with all of this anyway? |
| Agent Weber: | Well, I know, I know. |
| Mr. Shoulders: | You know what? |
| Agent Weber: | What you know. |
| Mr. Shoulders: | You know what? |
| Agent Weber: | *My only question in all of this, our only question—we can't figure this out. This is the one piece I would like you to help me answer. Why shoot Chris Janis?* |
| Mr. Shoulders: | I didn't shoot him. I didn't shoot him. That's all I got to say. I ain't the shooter man. That's all I got to say. |
| Agent Vose: | You know what, you have already asked for an attorney and that is fine. We are not going to ask you any questions at all. So that was your opportunity. Here's the deal. |

13

| | |
|---|---|
| Mr. Shoulders: | But I ain't the shooter. |
| Agent Vose: | Just be quiet. You already asked for an attorney. |
| Mr. Shoulders: | Yup. |
| Agent Vose: | Okay? What [SA Weber] is trying to say here and what all of this indicates and what we already know, you didn't deliver the kill shot, we know that. But you did shoot. So you have an opportunity to have a life after all of this. Right? But that's contingent upon you cooperating with us. Because you have already asked for an attorney, like I said, we are not going to ask you any more questions. But when you do get an attorney let him know that we were here and we know this whole story. Right? We know you didn't deliver the kill shot. And that's huge, because the person who delivered the kill shot, Clarence, he's the one who is going to be paying for this. So that's why we are here. |
| Mr. Shoulders: | Why did you guys know—this dude had another gun pointing at me, so I had to make the shot? |
| Agent Vose: | I am making it very clear right now— |
| Mr. Shoulders: | —I'm just saying man— |
| Agent Vose: | —We are making it very clear right now— |
| Agent Weber: | —You can choose to talk. You said earlier— |
| Mr. Shoulders: | I am talking. I am trying to talk right now. |
| Agent Vose: | You need to clear this up. |
| Agent Weber: | I want to be clear, just for the record, I want to be clear, are you willing to talk to us about it? |
| Mr. Shoulders: | Yeah. |

(Docket 127 at pp. 4-6) (emphasis in original).

The magistrate judge determined that after defendant invoked his right to counsel, he did not initiate contact with the agents and the agents interrogated him. (Docket 127 at pp. 11-15). The government objects to these findings. (Docket 146 at pp. 2-5).

"A defendant 'initiates' an interrogation if he or she 'evinces a willingness and a desire for a generalized discussion about the investigation.' " Owens v. Bowersox, 290 F.3d 960, 963 (8th Cir. 2002) (quoting Holman v. Kemna, 212 F.3d 413, 417 (8th Cir. 2000)) (internal alteration and quotation marks omitted). "[O]nce a defendant invokes his or her right to counsel, the defendant's initiation of police interrogation is necessary but not sufficient to establish a waiver of that right. The ultimate question is whether the circumstances as a whole (including the initiation) indicate that the defendant voluntarily, knowingly, and intelligently waived his or her right to counsel." Id. at 964.

The court finds the record does not establish defendant initiated the dialogue with the agents after invoking the right to counsel. After he requested an attorney, defendant reiterated he did not know why the agents were questioning him, "I don't know what you guys are talking about.", responded to a question from SA Weber, "You are at a crossroads, ok?", and asked his own questions about the agents' reasons for interrogating him, "What, what do I have to do with all of this anyway?" (Docket 127 at pp. 4-5). SA Weber then asked, "Why shoot Chris Janis?" Id. at p. 5.

15

Defendant's questions on why the agents were interrogating him cut in favor of finding he initiated contact, but that factor is outweighed by other circumstances. There was no break between defendant asking for an attorney and the agents continuing their dialogue with him and encouraging him to speak without a lawyer. Cf. United States v. Horton, No. 4:08CR3005, 2009 WL 1872612, at *6 (D. Neb. June 30, 2009) (finding no initiation where "[m]ere seconds passed between" assertion of right to counsel "and the officer's explanation of why the defendant should" waive his rights); see also United States v. Gil-Garcia, No. 15CR2162, 2015 WL 9647668, at *5 (D. Minn. Dec. 7, 2015), report and recommendation adopted, No. CR152162, 2016 WL 75054 (D. Minn. Jan. 6, 2016) ("Rather, SA Holden's statement on its face was plainly encouraging Defendant to submit to a generalized discussion about the investigation, that is to say, it was an effort by law enforcement to convince Defendant to again submit to interrogation without an attorney present as Defendant had unequivocally requested. This is precisely the type of behavior that the *Edwards* rule was created to deter."); United States v. Edenso, No. 3:15-CR-30076, 2015 WL 6108048, at *3 (D.S.D. Oct. 15, 2015), report and recommendation adopted, No. 3:15-CR-30076, 2015 WL 6821275 (D.S.D. Nov. 5, 2015) ("[T]he impetus must come from the suspect and not from the officers."). SA Weber's immediate question, "You are at a crossroads, ok?", constitutes interrogation because it is "express questioning" and "reasonably likely to

16

elicit an incriminating response" by encouraging defendant to comment on his charges.  Jackson, 852 F.3d at 771.

SA Weber's question, "Why shoot Chris Janis?", is obviously interrogation.  SA Weber testified his "intention was to make a statement, telling him what the hole in our investigation was.  It came out as a rhetorical question.  It was not my intention to elicit a response from him.  I was sending him home to think about cooperating in the future, generally." (Docket 127 at p. 7).  The agents were questioning defendant because they suspected him of having a role in killing Chris Janis.  In prefacing his question, SA Weber stated it was his "only question" that he "can't figure . . . out" and that he "would like [defendant] to help [him] answer."  Id. at p. 5.  Considering the agents' reasons for sitting down with defendant, the subject matter of the question and SA Weber's prefatory comments, it defies commonsense to say the question, "Why shoot Chris Janis?", is not "express questioning" that is "reasonably likely to elicit an incriminating response."[7] Jackson, 852 F.3d at 771.

Based on "the circumstances as a whole," the court finds defendant did not initiate interrogation with the agents.  See Owens, 290 F.3d at 964. The agents violated Miranda and Edwards after defendant invoked his right

---

[7]SA Vose candidly admitted that when he heard SA Weber's question he felt compelled to step in and stop any further questioning.  (Docket 106 at pp. 25:10-21 & 26:17-27:2).

17

to counsel.[8]  On that basis, the court suppresses from the government's case-in-chief defendant's statements following his invocation of his right to counsel.  See Vanover, 630 F.3d at 1114.

**ORDER**

Based on the above analysis, it is

ORDERED that the government's objections to the magistrate judge's report and recommendation (Docket 146) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 127) is adopted in full.

IT IS FURTHER ODERED that defendant's motion to suppress (Docket 89) is granted.

IT IS FURTHER ORDERED that a scheduling order will follow.

Dated September 4, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

---

[8]The violations occurred after the agents provided defendant with Miranda warnings, but the government failed to show a waiver that "was knowing, intelligent, and voluntary."  Woods, 829 F.3d at 680; see Edwards, 451 U.S. at 484 ("[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.").